ALVERNEST KENNEDY,

       Plaintiff,

      v.                          Case No. 25-CV-225

JOANNA BARON,

       Defendant.

## DECISION AND ORDER

Plaintiff Alvernest Kennedy, who is currently incarcerated at Racine Correctional Institution and representing himself, brought this 42 U.S.C. § 1983 action against Defendant RN Joanna Baron, asserting that on September 23, 2024, RN Baron attempted to forcefully administer a dangerous lethal dose of insulin to Kennedy during a blood sugar check. The Court screened Kennedy's second amended complaint and allowed him to proceed on a Fourteenth Amendment denial of medical care claim against RN Baron in connection with alleged insulin overdoses at the Waukesha County Jail in September 2024. (ECF No. 8.) This matter comes before the Court on RN Baron's motion for summary judgment. For the following reasons, the motion for summary judgment will be granted and the case will be dismissed.

## BACKGROUND

At all times relevant, Kennedy was diabetic and housed at the Waukesha County Jail. Although the court allowed Kennedy to proceed on a denial of medical care claim in connection with alleged insulin overdoses in September 2024, the only day Kennedy asserts he received an insulin overdose from RN Baron was September 23, 2024.

On September 23, 2024, Kennedy was escorted to his morning diabetic medical blood sugar check and insulin administration visit. The results of Kennedy's blood sugar level check revealed that his blood sugar level was between 150 and 200, which required that Kennedy receive two units of fast acting insulin. The parties do not dispute that Kennedy was to receive two units of insulin. Instead, they dispute whether RN Baron put two units of insulin into the syringe.

According to Kennedy, there were over six units of fast-acting insulin in the syringe. Kennedy told RN Baron that there was more than the required amount of two units of insulin in the syringe. He requested permission to remove the excessive amount of insulin from the syringe. RN Baron told Kennedy to hand the syringe back to her and prevented Kennedy from removing the excess insulin from the syringe himself. Kennedy again informed RN Baron that there were more than six units of fast-acting insulin in the syringe and requested that the excessive amount of insulin be removed. RN Baron told Kennedy, "No." RN Baron explained to Kennedy that she would administer his insulin and that, if he did not take the amount of insulin contained in the syringe, she would instruct Officer Farrow to issue Kennedy a conduct report. She then told Kennedy that if he was not going to take the amount of insulin she drew in the syringe, she would mark him as a "refusal." Kennedy told RN Baron that she should remove the excess amount of insulin from the syringe so he can take his insulin diabetic treatment to manage his diabetes and to stop his heart from beating fast. He stated that he did not want her to administer the excessive amount of insulin because "he did not want to die." Kennedy stated that he was not refusing his insulin but that she was trying to kill him by forcing him to take too much insulin. RN Baron stormed out of the conference room and yelled to security staff, "He's a refusal." (ECF No. 51 at 7–8.)

2

According to RN Baron, she drew up two units of insulin, and Kennedy asked her to put the cap back on the needle. RN Baron informed Kennedy that nurses do not recap needles, and she handed him the syringe. Kennedy put his glasses on and inspected the syringe. He stated, "There is too much insulin in the needle." RN Baron informed Kennedy that there were two units of insulin in the syringe. Kennedy asked Officer Farrow if it looked like there were two units in the syringe, and RN Baron informed Kennedy that Officer Farrow is not a medical person. RN Baron asked Kennedy if he was refusing the insulin, and Kennedy responded, "I'm not refusing, there is too much insulin in this." RN Baron advised Kennedy that if he was not going to take the injection, it was considered a refusal. Kennedy did not take the proffered dose of insulin. (ECF No. 31, ¶¶ 6–7.)

**LEGAL STANDARD**

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). The Court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The Court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (citation omitted). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id.* If the movant

3

sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law, "[t]he court shall grant summary judgment . . . ." Fed. R. Civ. P. 56(a).

**ANALYSIS**

Kennedy asserts that on September 23, 2024, RN Baron attempted to forcefully administer a dangerous lethal dose of insulin to Kennedy during a blood sugar check in violation of the Fourteenth Amendment. To prevail on a claim under the Fourteenth Amendment, a plaintiff must show that (1) the defendant acted purposefully, knowingly, or perhaps even recklessly, without regard to his subjective awareness of the risk of inaction and (2) the defendant's response to the medical condition was objectively unreasonable. *Pittman v. Madison Cty.*, 108 F.4th 561, 570–72 (7th Cir. 2024). Once a pretrial detainee shows that a jail official's failure to act was purposeful and intentional, the sole question is an objective one: Did the defendant "take reasonable available measures to abate the risk of serious harm?" *Id.* at 566, 572. "The objective reasonableness of a decision to deny medical care . . . does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable [jail official] in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570.

As an initial matter, although Kennedy asserts that RN Baron attempted to forcefully administer a dangerous lethal dosage of insulin, there is no evidence that RN Baron used physical force to inject him with the wrong dose of insulin. Kennedy nevertheless argues that RN Baron refused to give Kennedy a proper dose of insulin. RN Baron asserts that she put two units of insulin in the syringe. Kennedy maintains that there were over six units of insulin in the syringe.

4

Even viewing the evidence as Kennedy urges, Kennedy's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort . . . without then developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). Kennedy maintains that he would have been harmed if he had administered the higher dose of insulin because taking too much insulin leads to a risk of chest pain, heart attack, and death. He offers no medical evidence beyond his own belief that he could have been seriously injured by taking six units of insulin on September 23, 2024. Kennedy's speculation that he would have been injured by administering six units of insulin is insufficient to allow a jury to find in his favor. *See Flowers*, 105 F.4th at 945 ("Speculation cannot create a genuine issue of fact that defeats summary judgment." (citation omitted)).

Kennedy also asserts that, by missing his morning dose of insulin, he had an elevated blood sugar level, chest pain, and blurry vision. In cases where jail officials "delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) (citations omitted). While insulin is needed to address a high blood sugar level, Kennedy's medical records demonstrate that his blood sugar level later that day was 153, which was lower than his morning blood sugar level of 166. (*See* ECF No. 52-1 at 17.) Kennedy administered two units of insulin during the September 23, 2024, afternoon blood sugar check. (*Id.*) In addition, Kennedy contends that he had fast heart rhythm from chest pain and blurry vision. Yet, there is no evidence that reasonably suggests that these symptoms were caused by Kennedy missing his morning dose of insulin on September 23, 2024. Kennedy contends that he continuously complained about chest pain and blurry vision from May 2024 to February 2025. Kennedy has failed to offer medical evidence that

tends to confirm or corroborate his claim that the delay in receiving insulin was detrimental. *See Williams*, 491 F.3d at 715. In sum, Kennedy presents no evidence from which a jury could reasonably conclude that he was negatively impacted by or suffered any injury as a result of missing his morning dose of insulin on September 23, 2024. *See Waldrop v. Wexford Health Sources, Inc.*, 646 F. App'x 486, 490 (7th Cir. 2016).

## CONCLUSION

For these reasons, RN Baron's motion for summary judgment (ECF No. 29) is **GRANTED**. Kennedy's motion to supplement (ECF No. 59) is **GRANTED**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin on June 15, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.